CHARLES A. FERGUSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11313.   Promulgated December 19, 1928.

*Jacob Wasserman, Esq.*, for the petitioner.
*L. L. Hight, Esq.*, for the respondent.

824

826

**OPINION.**

TRUSSELL: The record in this proceeding shows that the old partnership of Blodgett, Ordway & Webber was in existence during the calendar years 1916, 1917, and 1918, and that it was dissolved by limitation on December 31, 1918, on which date it transferred its merchandise on hand at cost less an allowance for depreciation and shortage to a new partnership organized to take it over and begin business on January 1, 1919. Respondent has allowed the old partnership in making its return of net income for the calendar year 1918 to adjust its closing inventory of merchandise on the basis of " cost or market whichever is lower " and has carried such adjustment into the books of the new partnership and determined the net profits of that partnership for the calendar year 1919 upon this adjusted basis. The theory upon which this action has been taken is not entirely clear, as no argument was made upon the hearing of this proceeding and respondent did not file a brief, but from the statements in the notice of deficiency it may be gathered that respondent has assumed that there was no sale by the old partnership of its assets but a distribution in kind and a contribution by the old partners of its distributed assets to the new partnership, and that the latter took such assets at their inventory value to the old partnership, which at that time was " cost," but the subsequent reduction of that inventory adjustment to " cost or market whichever is lower " now calls for a corresponding adjustment in the asset accounts of the new.

Petitioner insists that the new partnership was wholly distinct from the old and that it purchased from the latter its merchandise at cost, which was its then book value according to the closing inventory, less a fixed allowance of $75,000 to cover depreciation and shortage, and opened and maintained its books upon such a cost basis and

consequently should have its profits computed on that cost, irrespective of any later adjustment of inventory values secured by the old partnership, as an incident to the determination of its income-tax liability for a prior year.

The record shows that the new partnership of Blodgett, Ordway & Webber, created on December 30, 1918, was not merely a continuation of the former partnership under that name, but a new partnership with distinctly different interests. Its contract of partnership evidences the fact that the purpose of its organization was to acquire certain assets and assume certain of the liabilities of the old partnership. Its opening entries on January 1, 1919, evidence the fact that the merchandise was taken at cost less an allowance of $75,000 made by the old firm. Its indebtedness to the old firm is set up and paid on this basis and the capital accounts of its general partners, who were general partners of the old firm, and the amount of whose distributive capital interests in that firm as of December 31, 1918, was contributed by them to the new firm, were computed and entered on its books on that basis, and by its contract of partnership it obligated itself to pay the large capital accounts of the retiring general partners of the old firm, who acquired comparatively small interests as special partners in the new. The separation of the interests of the old and the new partnerships appear to have been definitely recorded and maintained upon the books of the new.

The record shows the circumstances attending the taking over of the merchandise of the old firm. Petitioner testifies that at the time of organization of the new partnership a conference was held by representatives of the old and new partnership to determine the basis upon which the merchandise would be taken. At this conference Ordway and Webber, general partners in the old concern and having an interest in its profits and in the assets in question, represented the partners with such interest and petitioner represented the new general partners, who had no interest in the property of the old firm but were concerned wholly with the interests of the new. At this conference it was agreed that the price to be allowed by the new firm for the merchandise was $1,051,060, or cost, less $75,000, to cover depreciation and shortage.

Following this it is shown that this merchandise was entered on the books of the new partnership at $1,051,060, and a credit of $75,000 taken against the account of the old partnership and this sum credited by the new firm to its profit and loss account. The books of the new partnership show that this cost was maintained without adjustment and its profits computed and entered upon this basis throughout the year 1919. No question was raised in respect

to the 1918 closing inventory of the old partnership until June, 1919, when that partnership made its return of income for the year 1918 to show the distributive shares of its general partners. In making this return that partnership adjusted the inventory from cost to "cost or market whichever is lower," thus reducing it to the sum of $901,045. This adjustment reduced, by the difference between the two inventory figures, the net profit returned by that partnership for that year, and the individual distributive portions of its general partners. In the making of this return the new partnership was not concerned, and as to the adjustment in question, petitioner testifies that he was wholly ignorant of same and this we may well believe, considering the fact that he was not affected by any action increasing or decreasing the distributive shares of the general partners of the old firm. The question before us for decision is whether or not the adjustment made and permitted in the closing inventory of the old partnership must be carried into effect to reduce the opening inventory of the new.

The new partnership, and incidentally this petitioner, as a general partner therein, assumed a definite indebtedness to the old firm for the merchandise in question of $1,051,060 less a credit of $75,000. The question of the correctness of the inventory made some months after the negotiated sale at $1,051,060 less $75,000, by which the property in question was ascribed a market value at the time of sale of only $901,045, is not before us, nor need we consider the correctness of respondent's action in allowing any inventory value in respect to merchandise already disposed of. If the later inventory was correct it merely means that petitioner and his new associates made an unwise purchase, but having made it and being obligated to pay that price, the true profit of the new partnership must be determined by use of that figure. If error was made in the allowance of a reduction in the inventory figure to the old partnership as of December 31, 1918, it can not be corrected by carrying into the accounts of the new partnership the amount by which the closing inventory of the old partnership was adjusted.

The new partnership of Blodgett, Ordway & Webber having acquired the merchandise of the old firm at $1,051,060 less an allowance of $75,000, its profit for the calendar year 1919 should be computed upon the basis of such cost.

The deficiency should be redetermined in accord with the foregoing findings of fact and opinion.

Reviewed by the Board.

*Judgment will be entered pursuant to Rule 50.*